Please be seated. Your Honor, the court case on the docket this morning is 2-22-0178. The people of the state of Illinois plaintiff believes the male v. Glover defendant, Kevin, arguing for the appellant, Ms. Elena E. Bennett, arguing for the appellant, Mr. Alan Padrige. Ms. Penick, you may proceed. Thank you, Your Honor. Good afternoon. Good afternoon. Is this okay? About five minutes, seven minutes. May it please the court, my name is Elena Penick, appearing on behalf of defendant appellant, Lionel Glover. I'd like to stand on my brief for Issue 2 and focus on Issues 1 and 3. Before I turn to the trial error in Issue 1, it bears mentioning that nothing about this case is typical. Mr. Glover has a Class X felony conviction stemming from a roadway shooting in Volo, Illinois, but he's also a family man and was a treasured employee who was first and foremost a victim. The twin brothers, struck by gunfire, hardly had clean hands. They stole Glover's car while he was getting ready for work. They evaded police the first time Glover reported seeing his stolen car on the road. And while there are conflicting stories about what happened the night of the shooting, the surviving brother admitted to being on top of Glover, and we know from DNA evidence that one or both brothers had their hands on the gun that Glover ultimately used to fire at them. So the closeness of the evidence plays directly into the trial error raised in Issue 1. Who introduced the gun and were the shots justified or at least mitigated by Glover's belief in the need for self-defense? After sitting through a week's worth of evidence, these were difficult questions for the jury to resolve. And then on Day 2 of deliberations, a gift of sorts arrived. An electronic copy of the state's closing argument PowerPoint presentation was accidentally sent back to the jury room during deliberations along with other exhibits. I have to say the way you've presented that, accidentally and a gift, you know, I'm just not sure this record shows that it was accidental. I'm not saying anybody in fact did it on purpose, but I don't know how it can be considered accidental based upon the way you just phrased that. Well, a gift accidentally, I would say from the jury's perspective, they're struggling to resolve these difficult questions and then, you know, here's something that will help them. So I don't think it was actually on purpose. It's more that it aided their deliberations. I'm sorry. One follow-up. The interesting thing is they struggled for six hours. They apparently knew that they shouldn't have it, yet they didn't do anything for six hours. What happened? Well, I mean, just to clarify, I don't think they knew at all that they couldn't have it until it was withdrawn. So there was a note submitted that afternoon after it was removed from the jury room where the jury is, you know, and the jury didn't have it the day before. Right, but I don't think it's – I wouldn't take that to mean that they knew it was improper. I mean, there's questions that come up in the, you know, the jury room. Can we have a definition for this? Do we have that video? You know, I don't think it was clear to them at all. Everything that was in that PowerPoint, the jury had already heard that, correct? Correct, with the exception of the notes from the prosecutor. The notes were basically reminding the prosecutor to say a certain thing. So the notes that were there were said by the prosecutor, were they not? It was repetition. Yeah, well, it goes beyond repetition. I mean, and our argument isn't really focused on the notes as much as the trial attorney's argument was because our position is that the whole thing was damaging going back. Yes, the jury heard this material before, but the jury room itself transforms the impact of that content in ways that, you know, you really can't eliminate the prejudice. I don't understand that last argument. The jury conforms it so you can't eliminate the prejudice? Say that again? Well, maybe I can phrase it a little differently. So the law is clear that there are things that are proper in the courtroom that are not proper in the jury room, and one of those things is any sort of partisan argument. I mean, you know, the Sixth Amendment enshrines the right to an impartial jury, and the jury room is sacrosanct. So what that means is deliberations are kept secret to protect them from improper influence. Correct. Jury instructions are drafted in a way that they're not having a partisan slant. You can have, of course, state's attorneys in the courtroom, but they can't be in the jury room, right? They can't be staring over their shoulder, you know, giving expressions to indicate how the jury should find in the case. So it's a completely different animal having that partisan-type material in the jury room, in addition to it having that sort of bolstering cumulative impact just by virtue of the repetition. Didn't the court cure the error when it stated to them that closing arguments aren't evidence and shouldn't be considered by you as evidence? Absolutely not. I mean, you know, the problem with the jury having the state's PowerPoint presentation wasn't that it contained argument not based on the evidence, but that it contained argument at all. And the key thing here is prejudice. I mean, everyone agrees that, you know, this didn't belong in the jury room. And so was this error prejudicial? And again, this case is not typical because we don't have to speculate. We know. The jury sent the judge a note telling him that it did impact their deliberations. Judge, we had a copy of the state's PowerPoint. Many people formed thoughts after viewing the PowerPoint. Why were we given evidence or information we should not have seen or used? This is a problem for us. We used the PowerPoint extensively. So, you know, reading this note, you might say the jury sounded frustrated in that the presentation made such an impact on their deliberations that that impact was hard to undo. And, in fact, the U.S. Supreme Court has long held that a juror who's formed an opinion cannot thereafter be impartial. So, you know, proof of prejudice doesn't get much clearer than a jury note lamenting that people already formed thoughts based on material that was subsequently deemed improper. So out of the 59 slides that went back, four of them had notes, right? I think so, yes. But, you know, again, it's really not just about the notes here. I mean, this one handy digital file, you know, the prosecutor had meshed little bits of audio, video with argument and instruction, and the whole point of it was to, you know, persuade the jury to convict. And so the presentation was basically like a sizzle reel for the prosecution. They brought these Madison Avenue style tactics off the courtroom floor and into the constitutionally protected sphere of the jury room where impartiality has no place. So, you know, those tactics might be proper in advertising, but here we've got, you know, the presentation includes, for example, a chart. It builds over the course of several slides, making the case for finding him guilty. And at the end, it's like they cross out, you know, Glover's testimony with these big red X's. So visually communicating to the jury how worthless his testimony is. This is what, you can do this in closing argument. You can do this in an advertisement. You can't do this in the jury room. How did the jury see them? Well, there was a disc, and so there was a computer presumably available to them that allowed them to go through. And again, having this for six hours, I mean, it's not a matter of like, oh, we had the disc and then it was taken away. They dove into this material, and I would encourage your honors to do the same. You know, it's 58 slides. It takes time to go through, look at the bits of video and so forth. But, you know, it's impactful, and that's the whole point of it. If the jury heard, saw the slides in the courtroom and heard the prosecutor kind of repeat the notes because they were to help her remember what she wanted to say about a particular slide, can we consider this extraneous or, because there are cases that talk about anything extraneous, and they call it extraneous evidence, is presumptively prejudicial. Is this extraneous or is it something else? You know, it's really a unique situation. I think we could certainly analogize to cases where it's extraneous, but here the material is admittedly proper in the context of the courtroom. And so maybe it's a little more like something that was admissible but shouldn't have gone back because, you know, it's inflammatory or sensitive. But it goes even farther than that because of the partisan nature. So even if it's not presumptively prejudicial, again, you come back to this note from the jury that says, this made a big impression on us, so you can't undo that. You rely on people versus car for undue influence and bolstering. Yeah. Would you say it's more like that than as Justice Hutchinson described? It is in the sense that, you know, it gives them the opportunity to, you know, review the material at their leisure, which gives it more impact. But it goes beyond that, again, in that it's this material of an argumentative, partisan nature that I don't think was at issue in car. So in some ways even stronger. More aggravating. More, yeah. The jury sent out several notes during the course of their deliberations. And could you tie any of those notes directly to something from those slides or something that was identified on that slide or slides? Not specifically. I think the larger takeaway from the jury notes is that they were really struggling with this case and that, you know, for all we know, it might have been a full acquittal had they not received this content. I mean, there was a lot of back and forth, and they ultimately reached a compromise verdict. But it could have been leaning the other way. But I wouldn't necessarily draw anything from it. How was it a compromise? Well, you know, there were two people who were shot here, and he was found fully justified in shooting one. And the one brother who died, you know, it wasn't full justification, but it was mitigating circumstances. So it may not have been a compromise from the jury's perspective. I don't know what all went into that verdict. But looking at it cold, you know, it's kind of an in-between outcome. Well, clearly I don't think the trial judge thought it was probably the correct verdict. Would you agree with that? Absolutely. And that plays into Issue 3, if I might move on. You know, in the event this court does not remand for a new trial, sentencing relief is really warranted here. It's not just that Glover got slammed at sentencing, it's that the court's comments showed no loyalty to the jury's finding that there was a mitigating factor here to reduce first-degree murder to second. So whereas the jury's verdict means it found Glover was either provoked or had an unreasonable belief in the need for self-defense, the trial court was frankly hostile to either theory, you know, characterizing Glover's testimony as an outrageous lie, rejecting the idea that any type of justification existed, and describing Anthony as having been killed in cold blood and for no reason other than that Glover wanted his car back. Yet the jury's verdict on second degree clearly dictates otherwise. So furthermore, Section 5-5-3.184 expressly states that when there are substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense, that such grounds shall be afforded accorded weight in favor of minimizing a prison sentence. So here, because the court rejected the jury's factual findings and impermissibly relied on its own contrary findings to justify a severe sentence, this 21-year sentence should be vacated in the event a new trial is not ordered and the matter remanded for compliance with that mitigation section. If this court were to reverse or essentially declare a mistrial, which would, by a decision we could make, what cases could be tried if it went back for trial? Or what offenses could be part of the indictment? Well, I would say he could be retried on second degree murder and or aggravated battery with a firearm as to the deceased individual. What about first degree murder? He wasn't found not guilty on first degree murder, was he? Well, the jury found that they were mitigating circumstances and so the question of that can't be relitigated. So there's actually in pattern jury instructions 7.01S and 7.02S speak to the situation where someone was being retried for second degree after a trial on first. So it basically would look like the issues for first degree murder but, you know, second degree. They couldn't relitigate the question of mitigation. That would be in his favor in a retrial. Well, it might be disfavored but it wouldn't be improper, would it? No, I mean they can't prosecute him for first degree murder any longer. Okay. Do you want to talk about the Manson Challenge? If you have any questions, Your Honor, I'd be happy to address it otherwise. No, thank you. Do we, I suppose, looking at what happened in that record, you're basically saying that the trial didn't actually stop, the proceedings didn't actually stop, they didn't exclude everybody and just talk to this person and figure out the state's reason, correct? Speaking about the vaccine issue now? Yes. I'm sorry. Well, I mean, do you want them to stop what's going on in the trial at that time? Take everybody except this juror, actually take this, even this, the juror that they're questioning and have a hearing there or do you, or there was inquiry. What state, what's your reason for this? And the state identifies its reason. So do you just want a formal, I don't know what you, a formal hearing where nobody else is there? I mean, what's your distinction here? No, Your Honor, we're not looking for a formal hearing, just a little more in-depth tracking the cases about how this is supposed to happen. You know, there's three stages that are supposed to occur, the first of which involves making a prima facie case and the court's finding whether or not a prima facie case has been shown before you even get into the state's reasons. You have to make a prima facie case. If you just say, you know, I think that they're, you know, he, prejudice, he dismissed an African-American, the burden then shifts to the state to give a race-neutral reason, and they did that in this case. Well, the burden never shifted because the court never even made the finding. Well, I think the court must have thought it shifted because the court turned and looked at the state and said, what's your reason? Well, I don't think that that first stage is, was sufficient here because even though the burden may be primarily on defense counsel and counsel could have acted as more of an advocate on this issue, the trial court itself has some responsibility to conduct a comparative analysis of the juror that was removed and, you know, evaluate in light of these softer factors that are present in the courtroom that we might not be able to see looking at the cold record. For example, there was commentary that this was the only black person on the veneer, but were there other minorities? Were there facial, you know, expressions exchanged? Were there other things going on? The court really dropped the ball and sort of pushed it along to the... So it seems to me that the court presumed that there was a prime facial case made and then turned to the state and then the court made their ruling. Well, I think the case law supports that it needs to be more clear and deliberate than what happened here. Just casually referencing the fact that the state, oh, surely had its reasons and, you know, the court almost seems to be offended that this issue was even raised and so it sort of put the kibosh on anyone really giving it a thoughtful discussion. Well, if you look at the seven factors in finding Batson, it seems like the court made the right ruling. I mean, unless there was something else other than the only African American on the jury. And what was the race of the victims? Arguably Caucasian from what I can tell, but I don't think it's proper to say the court made the right ruling here. First of all, we don't have a fully developed record on this issue and that's what, you know, Tranco and Shaw show that unless you follow these steps, you really can't draw a conclusion about whether purposeful discrimination has been shown. For that matter, you know, the only reason cited was the fact that this individual had a negative experience with the police and that in itself might relate to that person's race. So it's not obvious from this cursory discussion that race played no factor here. We don't know. It should have been treated more seriously. And I think when the court denied the motion for new trial on this basis and is saying, look, I take this very seriously every time this is raised, I don't think that's what happened here. Maybe he meant to, but that's not how it played out. Well, you know, it's kind of interesting. Even the court was not the one who said, okay, I think, state, you have a reason. It's the defense who asked, which almost, if you look at it, there's a bit of an invited error problem there. The defense is saying, hey, I think he's, you know, I'm just asking what it was. So he's saying, I've made the case, now what's your answer? So I think, you know, I don't think once he's done that, why should the court say, yeah, he's right, what's your answer? Well, I think that the court, I think the cases show that the burden doesn't entirely fall on defense counsel once this issue comes up. And it's valid to raise this issue. There's one person on the veneer who's black, and that person's the first strike from the state. Hey, whoa, wait, let's slow down and see what's going on here. You know, defense counsel's own volunteering of some, well, maybe the state had this in mind in striking him. Maybe that speaks to the discomfort of raising this issue. It's kind of hard to say, oh, are you being discriminatory? You know, there's discomfort in that. But I think that – What exactly did the trial court do that was error? Well, the trial court didn't make a ruling as to whether there was a prima facie case. And then everything else flows from there. I mean, to the extent that those other steps – was there any difference insofar as what the procedural protocols call for? In other words, if he didn't make a prima facie finding, does that then mean that he shouldn't have asked the state for a reason? Because if he asked the state for the reason, as the panel has suggested, it implies that a prima facie ruling was in the favor of the defendant. Yeah. Well, I think even if you take the court's comments to be implicitly finding that no prima facie case was shown – No, not no prima facie case, that there was a prima facie case. Because after this implicit finding, he then did what you normally do, which is you ask the state for a rationale. Yeah. Right? Well, I don't think it was even a question so much as just putting words in the state's mouth that came from a defense attorney. It really wasn't a meaningful discussion or opportunity to rebut. And it was collapsing and confusing stages that are supposed to be more distinct and thoughtful. And the whole point of that is to build the record more than what we have here. Wasn't that the defense's burden to do that? I mean, yes, and also, you know, I think it's shared by the trial court to this responsibility of making findings that are explicit and drawing on factors that support the analysis beyond just brushing it aside. Like, of course, and the fact is the court also – the court's own comments suggest that the Batson objection was improper because, you know, no pattern could be shown because it's just one person. But that's not what the case law says. Assuming an arguendo that a prima facie case was presented and also that the trial court accepted it, was the rationale given by the state and the conclusion by the trial court erroneous against the manifest way of the evidence, manifestly erroneous? What was it insofar as the standard of review for error is? Well, I mean, I understand Your Honor is presenting a hypothetical, but our point here is that the record isn't – that you're talking about this proceeding wasn't kosher. Yeah. And my point is the fact that it wasn't kosher or that it wasn't the appropriate dot every I and cross every T, how did that result in error that prejudiced your client? Well, the point is that we don't know – the record wasn't sufficiently developed as to the reasons behind this strike. So it's premature to say whether or not there was prejudice behind the state striking. And why hasn't – if it's premature because the record doesn't reflect it, why isn't this either a procedural default, forfeiture, or waiver on behalf of your client? I think, again, the case law supports that the burden is shared by defense counsel and the court to develop the record on this point and conduct the proper analysis. I believe the law probably says that the court is supposed to follow protocols and procedures. The point is, is that the protocol that the trial court didn't follow actually ended up, as far as your client is concerned, giving him something that he wasn't necessarily entitled to, according to the record, which was a prima facie finding that the record doesn't support because it's not there. So, you know, Justice Hutchinson said invited error. I'm suggesting it's not so much invited error, it's error that you can't establish as prejudicial because you can't establish how the decision by the trial court, insofar as saying that the rationale given by the state, was manifestly erroneous. Well, I can't establish it because the record is inadequate on this issue. Because the defense attorney failed to make the record. Exactly. I think it's certainly a contributing factor, but I do think it's shared with the responsibility of the court here and that the court dropped the ball in rushing this along and, you know, brushing aside the objection. I have nothing else. I believe the time is up, correct? Thank you. The reason why I'm not sure is I was so enthralled, I just didn't realize the time had passed. I can stay here as long as you'd like. Thank you. Thank you. Mr. Rodriguez, you may proceed. Good afternoon, Your Honors, and may it please the Court. I'd like to start with the first issue unless the Court has a preference in regards to which one. I will assume the Court does not. The trial court did not err in denying defendant's motion for a mistrial, based on an inadvertent inclusion of the People's PowerPoint presentation that was included with the other evidence that was sent to the jury during deliberation. Mr. Rodriguez, could you pull that up just a bit? Yes. Thank you. Sorry about that, Your Honor. As the law is clear, not every situation in which prejudicial, or excuse me, or unauthorized information that reaches the jury leads to or results in prejudicial error. What is this? Is it extraneous or is it some other word? Your Honor, it's not extraneous because under Collins, what the Court was concerned with in that case was the jury foreman going out and assessing the crime scene on his own, identifying facts which were not within the record. That's what this Court said was prejudicial because it injected impermissible, extraneous, extrajudicial information. This is actually less than that. It's completely proper information. It was arguments that the jury heard during closing. The PowerPoint presentation was played for the jury during closing. Defense counsel did not object to that. The trial court identified that everything in this PowerPoint was absolutely proper. There were proper arguments that were heard. There were proper copies of the IPI instructions. There were proper arguments and pieces of evidence that had already been admitted in which the parties would agree the jury would be entitled to view. However, as your opponent points out, the jurors indicated in that case, in this case, that they relied on this and they weighed heavily or looked on this information and played it again. And, I mean, you have to, you're admitting, I think you conceded, that this was error. The question, is it harmless error? And that's your burden to prove. So, you know, you cite the Taylor case. Taylor is a little different than the case here because they were given a slip opinion and they read it and the trial court found that really that that was an error. But in this case, you have the jurors actually saying in a note, hey, we really relied heavily on this and we realized we probably shouldn't have this back here. Isn't that different than Taylor? And isn't that different than just, you know, some little error and some cumulative evidence that they may have already heard by the juror? So, to answer your question, Justice Shostakovich, I think it would be important to clarify what the error was. Justice Wall on the same page. Yeah, I want to hear it more. The error was not, the error was giving the jury the power of presentation. Correct. That's the state's closing argument. They're not entitled to that. What is not the error is that they were given extraneous extrajudicial information. Everything contained within the PowerPoint was proper information, an argument that they had already heard. Were they, was it agreed then by the parties that that PowerPoint was going back to the jury? The PowerPoint was never to go back to the jury. Okay. So, whether or not they were extraneous notes, because the extraneous notes were argued to the jury anyway. Yes, they were. The jury saw all of this, and I understand what you're saying. Where's the error? They saw all of this. But I'm asking you, that one note from the jury, or that indication from the jury, that they relied on this, does that not bring it to reverse a lawyer? It does, Your Honor, because the jury instruction that the court sent shared that. And it was very clear, and it's very specific, and I'd like to read it so the court understands the full totality of how it resolved this issue, and nipped in the bud, so to speak. At 324 of the common law record, the court's notes says, quote, Members of the jury, I review the PowerPoint presentation. It was presented in its entirety to you during closing arguments. The notes to which you refer were argued to you during closing arguments. I remind you that closing arguments are not evidence, and anything that attorneys say to you should be based on the evidence and reasonable inferences to be drawn from the evidence. Any argument not based on the evidence should be disregarded. Please continue to deliberate. As this court's case law and as our Supreme Court's case law is crystal clear on this issue, when the court sends that instruction, it is presumed to cure any prejudice, and the jury is presumed to conform themselves with the instruction of the court and to proceed on with deliberations, which the record does support. How do you reconcile that instruction with what the note said that came from the jury that indicated that the exact opposite happened? So, Your Honor, in regards to that, when the jury received that note for the time period, I will fully admit that they apparently, based on the record, were reviewing it and looking at it. The critical issue is not the time frame. The critical issue is not how long did it have, but what was the jury instruction that was sent to them by the court, and did that correct the impact? And it did, because it informed them, as I just read, very clearly and explicitly, that this was argument. They even acknowledged in their own note, we know this is argument. So it's not as if they were conceptualizing this information as evidence. They misunderstood, based on the language of their note, this is argument. Why were we given the state's argument? And the court reminds them, this was argument you already heard. Everything that's in there is evidence that has already been presented to you and which you've viewed. They had the exact same evidence, the audio, the 911 call, the videos of the defendant's interview. All of that was with them in the jury room. So to the extent that they had that information in the PowerPoint presentation, it somehow was included in selective edits. I would argue that's most redundant. Let me ask you this then. When the court was going over, going through the exhibits with the parties, and they obviously discussed what was going to go back and what was not going to go back, what was discussed, if anything, regarding this video? And was it ever brought up that this would go back? So the PowerPoint was never discussed going back. Everything that was to be sent to the jury was literally every piece of evidence but for the stipulations, and a video between one of the victims, Jonathan Awad, and his father. Every other piece of evidence was set in the record that the parties agreed would go back to the jury. So why did the state never try to admit this to go back to the jury, admit it into evidence and or ask it to go back to the jury? Well, because it's closing argument, Your Honor. And so, you know, it's understood at the trial court level that the closing argument isn't going to be evidence. And I don't think it would have been proper for the state to attempt to use it as evidence. There you go. It wouldn't be proper for the state to use it as evidence. Correct, Your Honor. So how is it proper to send it back to the jury and have the jury rely on it? So I know that you were asking my point on the other side of this question. I believe in the record it's clear in the trial court says that there was some sort of inadvertent act by the clerk's office. So it wasn't an act in which you could devise some malintent by the state that they injected this into the jury's deliberation. Does it require malintent to have a reverse lawyer? Is malintent required? It's not, Your Honor. I'm using that in a more pluralistic way. I would say that it requires some indication. And what we don't have here is any establishment of prejudice because what you look at is not just the mere act but the core substance of it. What was this information that was being given to the jury? And as I've argued, this information was all proper information they'd already heard. So at most, its inclusion would be harmless error. It's redundant. It's redundant, Your Honor. And again, as opposed to cons, which the extraneous information was things that the jury was never entitled to see, would never have been provided to them during the trial. In this case, this was information that they all had already heard. Counsel, have you ever thought about incorporating that argument into a trial and suggesting to the trial court that the PowerPoint made during closing argument should be sent back to the jury? I am familiar that that has occurred on certain occasions, Judge. I think the issue with that is then the court reviews that in camera to identify any information which would be improper, and then perhaps there is a further editing down of distillation. The trial court, in this case, after the error occurred, reviewed the PowerPoint extensively and identified in the record that there was nothing improper about it whatsoever regarding that issue. I would note that at 1634 of the record, the court says in regress to this exact issue, quote, that the trial court found nothing in the PowerPoint, quote, that would in any way prejudice the defendant such that granting the mistride would be the only remedy. Therefore, the proper remedy in this situation was the curative instruction which the trial court sent and which law presumes that the trial. We recently filed first a civil trial that was rather substantial insofar as the millions of dollars that were involved. And we determined that since a mannequin that was constructed out of materials from a Menards or a Home Depot wasn't presented during the case in chief and wasn't subject to cross-examination, it was not something that should have been presented to the jury during closing argument. And so the rule of law, the holding is that if something isn't subject to cross-examination, it shouldn't really be used during closing argument. And I doubt that it should be allowed to go to the jury as well. And so how do you reconcile the holding of this court and that case relating to the idea that things that aren't subject to cross-examination shouldn't go to the jury? I would distinguish it by saying that every piece of evidence and everything that was argued that is contained within the PowerPoint was subject to cross-examination. There was all arguments that the jury heard previously that were contained within the totality of the case. But I don't know that it would be reasonable to say that it was subject to cross-examination for a variety of reasons, one of which is normally prosecutors aren't put on a stand and cross-examined about their closing argument. I would say that in regards to that, just to respond to Your Honor's question, it's that the pieces of evidence and the arguments were heard. And those were subject to the adversarial process, to cross-examination, to the admission of the evidence following the rules of evidence. So to the extent that there's an attempt to distinguish what Your Honor is discussing in this case and the hypothetical to this case, there was a testing of the adversarial process regarding every piece of information that was derived and contained within the PowerPoint. Because this is a culmination of all of that? Correct, Your Honor. Counsel didn't think, but I'm going to ask you the same question, didn't think there was any relationship between the notes and the PowerPoint as they were in. Of course, most of the notes came out after the PowerPoint left. But did you see any relationship between something in the PowerPoint and a question that had been asked by the jury?  Your Honor, to the best of my recollection, I don't believe that any of their questions were related to the notes themselves. I'd be happy to read the notes to you, but they dealt with IPI instructions regarding defendants. Which was, there was some included on the PowerPoint, correct? Correct, Your Honor, correct. Was that the one they were talking about? I'm sorry, I don't follow your question. Was the note related to the instruction that was identified on the PowerPoint? I believe one of their questions was in regards to identifying whether the defendant needed to mitigate his use of force in some way. Okay. Your Honors, I would like to move on to the Batson issue. Remand for a new Batson in this case is unnecessary. Sorry, what did you say? Unnecessary, Your Honor. What was unnecessary? The Batson. Remand for a new Batson hearing is unnecessary where the relevant facts and circumstances show that the defendant failed in his burden to establish a prima facie case of purposeful discrimination based on the people's use of their peremptory challenge. In this case, the relevant facts and circumstances show that the defendant failed to establish his burden to show that the people's use of their first peremptory challenge against the only African-American veneer person was in any way racially motivated. And I think my opponent on the other side indicated that there seems to be or it is at least the defendant's opinion that there is some symbiotic relationship in which the first step of the Batson three-step process is also or in some way the trial court's burden. That's incorrect. Batson in its prerogative clearly outlined that in the first step, the defendant must demonstrate that the relevant facts and circumstances are such that they raise an inference of purposeful discrimination. And this court's language and the Supreme Court's language has also been fairly clear that the mere fact that a peremptory challenge was used against an African-American veneer person who shares the same race as the defendant without more is insufficient to satisfy a prima facie burden of purposeful discrimination. That's what this court said in Edwards. That's what our Supreme Court said in Davis and in Posh. And based on the record, I think it is absolutely clear that the trial court understood the Rivera factors that our Supreme Court outlined and that based on its analysis and based on the language in the record, it shows that none of those factors applied for two distinct reasons which defeated defendant's prima facie burden initiation, I would say. Did the state commit any act of negligence insofar as the Batson proceeding was concerned? I don't think so, Your Honor. To the extent that there was any error, I think that error is due to defense counsel. So you want the state objecting to the question that the trial court made as premature because as far as the state was concerned, the defendant hadn't established a prima facie case and the trial court didn't on the record say that a prima facie case was established. I would acknowledge that the trial court did not use those exact words. I think you can devise from the record that the trial court did believe that several of the factors, the Rivera factors, were immediately inapplicable and the remaining three didn't apply. The racial makeup of the defendant and the veneer person, as I previously argued, is not enough in and of itself. The fourth factor was an evidence of preemptory strikes, which was completely absent from the record since this was the very first strike, and also that the race of the defendant, the victims, and the witnesses had no bearing whatsoever to this case. Well, if this juror, I think it was Juror 72, could get in the final group of jurors being, you know, questioned and the same thing had happened, do you think we would have had the same results? I mean, the state's position was he's been charged with crimes, did not, or he's been involved in crimes, I think, did not say it was, took his testimony that he was falsely accused but didn't really weigh in on that. I thought it was the victim. You know, that he's been involved in crimes. So, I mean, would it have been different if he were in the third panel being questioned? I don't think so without more facts, Your Honor, because as the Rivera factors indicate, and I think to respond to your question, that would have implicated a factor for the level of African-American representation in the veneer as opposed to the jury. Here we don't have that information. So in your hypothetical, perhaps there would be more that I could more fully explain that. But then more importantly, the reason why Juror 72 was stricken was that he had indicated at one point he was home and heard individuals break into his home and attempting to rob him. He called the police, and the police arriving, they treated him as if he was somehow in on it or, you know, a party to the set. It was subsequently identified that he wasn't, and he indicated the police never really saw the crime, he never heard anything. They didn't like the way they were responding. Correct. And so ultimately the reason that the State did proffer in response to the defendants continued sort of prodding to give him a response, even though that's not the proper batson step. The State indicated that this individual had had less than ideal experience with the police, that that likely may have an effect on him, and ultimately when you're engaging a voir dire, the whole purpose is to have dispassionate jurors who will look at the evidence and the arguments and consider them without any pre-taint. I have no further questions. You have no questions? Nothing. I don't either. Thank you. We appreciate your candor. Thank you, Your Honor. So for the reasons argued today as well as those in our brief, we'd ask you to affirm the defendant's conviction and sentence. Thank you very much. Thank you. Mr. Panek, you may proceed with rebuttal. Thank you. I just wanted to clarify a couple things about the first issue. So, you know, opposing counsel has argued that the instruction was curative here, and of course we've taken the position that it wasn't. But you can't even really conceive of an instruction that would have cured this issue because it's not just a matter of like, you know, pay no attention to the portions of the argument that aren't supported by the evidence or, you know, that are unreasonable inferences. The whole thing had no place in the jury room. But whereas in Taylor, you know, the court could say pay no attention to that slip opinion, that's not evidence, that doesn't belong, here the court can't say pay no attention to the state's closing argument because the state was entitled to have that considered in the context in which, you know, it was presented in court in an adversarial setting. But once they're in that jury room, all the adversarial stuff needs to be gone. No one for the state can be there, no arguments can be there, just evidence and instructions. What would have happened if, in an attempt to remediate, the trial judge had ordered a transcript of defendant's counsel's closing argument be presented and put with the jury in the jury room for deliberation? I don't think that would have sufficed because, you know, the whole point of once the U.S. Supreme Court is clear that once a juror forms an opinion, they can't thereafter be impartial. And what this note is telling us is we formed opinions. This mattered to us, you know. Maybe we were on the fence before, maybe we were going to quit, but we had this thing and it really helped us out and it's really hard to undo what we were, you know, that thought process. Are you referring to the cliché that says when you drive a nail into a piece of wood, when you pull the nail out, the hole remains? I wasn't referring to that cliché, but sure. I think that the other thing that bears mentioning is that my opposing counsel mentioned that the jury note suggested that they understood this was argument, not evidence. And I don't think that's clear at all. I mean, what the line is, why were we given evidence or information we should not have seen or used? This is a problem for us. You know, maybe lawyers know this is substantive evidence versus this is demonstrative evidence and this goes back and that doesn't, but all the jury knows is you told us we're done listening to things and we're going to go retire with the evidence and instructions and this is what we were given so we're going to use it. And they did. If some of the jurors or even all of the jurors had formed significant opinions or used it significantly when they viewed it, it still took them another two days to come to a resolution, didn't it? It did, but again, we don't know where they were even leaning before that, what impact this had. We just know this had an impact on them and the law is clear that we don't, we're going to assume that a juror who has formed an opinion is not fit to decide the verdicts in that case. Decide, you know, formed an opinion based on improper materials or prejudge the case and these were indisputably improper materials in the jury room. Well, when you say prejudge, I mean, they heard the instructions and they were told initially don't talk about this, don't talk about the case until it's over, then in the standard jury instructions they were told, okay, now it's time. Now you have to go back and deliberate. So they're back there deliberating and they should be forming opinions, shouldn't they? Correct, yeah. I mean, it's not that they prejudged in this case, it's that in situations where it comes to light during, you know, jury selection that someone has already formed an opinion that that person would not be a suitable person to seat on the jury. So by extension here, yes, we're supposed to be forming opinions. We've got this stuff. We are forming opinions and now you're taking it away? You know, that doesn't work. Who told them that they shouldn't have had it? Well, it sounds like the judge had it removed and the bailiff took it away. The jury said, we don't think we should have this, didn't they? No, that note came after it was taken away. So I'm not really sure. The record's not real clear on how it came to light. If somebody suddenly realized, uh-oh, that went back to the jury and then it was removed, I don't think it's clear on that point. Go look at that record. Yeah. We sort of come into it after the fact in the transcript, you know. This happened, it was removed, and now there's this note saying, you know, we used this extensively. And so in this situation, I don't think it could be much more clear that there's prejudice from the error and that a new trial is wanted. There was no other questions of the jury concerning the use of that PowerPoint, correct? Correct. Thank you. I don't want to be anal, but assuming if you are successful in your argument relative to error being prejudicial insofar as the instruction is concerned, the other two issues fall by the wayside, do they not? Yes. If there's a new trial granted under Issue 1, then the other two issues would be mooted. Be mooted. Thank you. Thank you. Thank you. We'll take the case under advisement and render a decision in that time. We have one more case on the call.